UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

KENDALL VANCE STUMPFF,              )
                                    )
                Petitioner,         )
                                    )
v.                                  )    Case No. 16-CV-0514-CVE-PJC
                                    )
SCOTT CROW, Interim Director,[1]    )
                                    )
                Respondent.         )

**OPINION AND ORDER**

Now before the Court is petitioner's 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1). For the reasons below, the petition will be denied.

**I.**

This cases arises from petitioner's convictions for manufacturing and possessing methamphetamine. In 2013, police searched petitioner's home after detecting the chemical odor associated with the manufacture of methamphetamine. See Dkt. # 7-5 at 19-20. They discovered a one-pot drug laboratory and arrested petitioner. Id. The state filed the following charges: (Count 1): manufacture of a controlled dangerous substance in violation of OKLA. STAT. tit. 63 § 2-401(G); (Count II): possession of a controlled dangerous substance in violation of OKLA. STAT. tit. 63 § 2-402; and (Count 3): possession of drug paraphernalia in violation of OKLA. STAT. tit. 63 § 2-405. See Dkt. # 7-1 at 1. The offenses occurred after two or more prior felonies. Id. Mark Kane was appointed as defense counsel. See Dkt. # 7-5 at 7.

---

[1] Petitioner is currently incarcerated at the Cimarron Correctional Facility, a privately-operated prison. The Clerk of Court is therefore directed to substitute Scott Crow, Interim Director of the Oklahoma Department of Corrections, in place of former director Joe Allbaugh, as party respondent. See Habeas Corpus Rule 2(a).

Petitioner, through counsel, waived the preliminary hearing. See Dkt. # 7-5 at 7. On May 1, 2013, petitioner entered a blind plea and requested placement in a drug treatment program. See Dkt. # 8-1. The state court accepted the plea and, over the objection of the prosecution, released petitioner on bond for treatment at Ray's House in Muskogee, Oklahoma. Id. at 8-1; see also Dkt. # 7-7 at 7. The state court deferred sentencing until after petitioner completed a two-year treatment program. See Dkt. # 8-1 at 5. Petitioner entered Ray's House on or about May 2, 2013. See Dkt. # 7-7 at 7. The following year, he left the facility to attend his father's funeral. Id. at 8. Petitioner was discharged from Ray's House when he did not return as required. Id. When petitioner was eventually apprehended, the state court reset the matter for sentencing. See Dkt. #8-3. That hearing was continued because the state court could not locate the original Lumpkin form (i.e., plea worksheet) that petitioner completed the prior year. Id. at 3-4. The form was eventually recreated, and the state court sentenced petitioner to a total term of 21 years imprisonment. See Dkt. # 8-4. The sentence represented the statutory minimum, based on prior convictions, and he received credit for the time spent at Ray's House. Id.

Petitioner timely filed a motion to withdraw the plea. See Dkt. # 7-4. Conflict counsel was appointed to represent petitioner during the withdrawal proceedings. See Dkt. # 7-5 at 10. The state court denied the motion to withdraw, and the Oklahoma Court of Criminal Appeals (OCCA) affirmed. See Dkt. # 8-5 at 41; see also Dkt. # 7-6. Petitioner filed this federal § 2254 petition (Dkt. # 1) on August 5, 2016. He raises three propositions of error:

(Ground 1): The plea was involuntary;

(Ground 2): Ineffective assistance of plea counsel;

(Ground 3): The plea must be withdrawn based on the missing paperwork.

See Dkt. # 1 at 3.

Respondent filed a response (Dkt. # 7), along with copies of the state court record (Dkt. # 8). Respondent concedes, and the Court finds, that petitioner timely filed his federal habeas petition and exhausted state remedies as to the above claims. See Dkt. # 7 at 2; see also 28 U.S.C. §§ 2244(d), 2254(b)(1)(A). Petitioner filed a reply (Dkt. # 11) on November 8, 2016, and the matter is ready for review.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's habeas claims. See 28 U.S.C. § 2254. Relief is only available under the AEDPA where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, because the OCCA already adjudicated petitioner's claims, this Court may not grant habeas relief unless he demonstrates that the OCCA's ruling: (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1);[2] (2) "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law," id.; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, id. at § 2254(d)(2).

---

[2] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)); see also House v. Hatch, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings").

3

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (alterations in original) (quotations omitted). When the state court's decision "identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case." Id. (quotations omitted). Significantly, an "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be objectively unreasonable, not merely wrong." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quotations omitted). "[E]ven clear error will not suffice." Id. Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). The Court must presume the correctness of the state court's factual findings unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Essentially, the standards set forth in § 2254 are designed to be "difficult to meet," Harrington v. Richter, 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002). A state prisoner ultimately "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

**A. Grounds 1 and 3: Withdrawing the Plea**

In Ground 1, petitioner argues that he did not understand the nature or consequences of his blind plea. He alleges that counsel led him to believe he would receive a split or suspended sentence[3] upon successful completion of the drug treatment program. See Dkt. # 1 at 11. Based on the prior convictions, the state court could not impose a suspended sentence without the prosecutor's consent. Id. Petitioner further argues that he did not understand his option to challenge the search of his home. Id. Ground 3 raises a related claim. Petitioner argues that the plea is unconstitutional because the state court lost his original plea paperwork, which he completed a year before sentencing. Id. at 20.

To comport with due process, a plea must be knowing, voluntary and intelligent. See Brady v. United States, 397 U.S. 742, 747-78 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). The defendant must be advised of the plea's "direct consequences," even if he does "not understand every collateral consequence." United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002). At a minimum, this includes the nature of the charges, the possible penalties, and the constitutional rights the defendant is waiving by entering a plea. See Brady, 397 U.S. at 756-57 (1970). "Whether a plea is voluntary is a question of federal law, but this legal conclusion rests on [the state court's] factual findings and inferences from those findings." Fields v. Gibson, 277 F.3d 1203, 1212 (10th Cir. 2002). The petitioner's testimony at the plea hearing is accorded a strong presumption of reliability. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

---

[3] A "split sentence" is split between incarceration and probation. For simplicity, the Court will refer to both sentences as a "suspended sentence."

The OCCA considered and rejected Ground 1, finding that petitioner was "fully advised of the consequences of his plea." Dkt. # 7-6 at 2. As to Ground 3, the OCCA further observed the "transcription reveals that the trial court utilized" the proper plea worksheet, and that "[p]etitioner did not object to the recreation of the form and makes no claim that the recreated form is incorrect." Id. at 3.

Having reviewed the record, the Court agrees. Federal courts need not grant relief based on every departure from standard plea procedures; the irregularity must "affect substantial rights" of the defendant. See United States v. Gigot, 147 F.3d 1193, 1197 (10th Cir. 1998). The following plea colloquy demonstrates the plea was knowing and voluntary, notwithstanding the missing plea worksheet:

> COURT: So this would be a blind plea as I understand with you going into treatment. I assume you understand . . . he's not really eligible for probation unless the state changes their mind at some point in time. Do you understand, Mr. Stumpff?
>
> PETITIONER: Yes, Your Honor, I do.
>
> COURT: You understand . . . that if the state doesn't agree to probation that maybe the judge will give you credit for the time there but there's nothing the judge can do?
>
> PETITIONER: Yes.
> . . .
> COURT: You are now 41 years old and completed 12th grade. Is that correct?
>
> PETITIONER: Yes, Your Honor.
>
> COURT: And . . . your attorney [has] gone over this paperwork. This is his writing but your answers. Is that correct?
>
> PETITIONER: Yes, Your Honor.
>
> COURT: You understand you are charged with manufacturing methamphetamine which, as filed right now, carries 21 years to life and a 50,000-dollar fine minimum. . . . Also a

>possession of CDS which carries six to life . . . and paraphernalia which carries zero to life . . . . Do you understand that?
>
>PETITIONER: Yes, Your Honor.
>
>COURT: Do you understand there is no plea bargain on this case? You're entering what is known as a blind plea leaving it to the court to sentence you within a range of punishment. But you wish to go to treatment and see if you can complete that and convince the state to do something better I guess. Is that your, what we want to do today, Mr. Stumpff?
>
>PETITIONER: Yes, Your Honor, it is.
>
>COURT: And you're pleading guilty to this case?
>
>PETITIONER: Yes, Your Honor.
>
>COURT: And this happened January 14th [2013]. There was a chemical odor or methamphetamine being manufactured. They entered the house here in Washington County and there was a one-pot meth lab that was found in the house and you told them that was yours. Is that correct?
>
>PETITIONER: Yes, Your Honor.
>
>COURT: And you're pleading guilty of your own free will?
>
>PETITIONER: Yes, Your Honor.
>
>COURT: Show the defendant was sworn and responded to questions under oath. He understands the nature, purpose, and consequence of these proceedings. His pleas of guilty are knowingly and voluntarily entered. He's competent. There's a factual basis for his plea and the prior convictions, which he has two or more of.

Dkt. # 8-1 at 2-5.

Petitioner has not presented "believable reason[s] justifying departure from the apparent truth" of his earlier statements. U.S. v. Sanchez, 105 F.3d 670 (10th Cir. 1997) (addressing involuntary pleas in the habeas context). There is no evidence, aside from petitioner's self-serving testimony at the withdrawal hearing, that counsel misled him about the prospect of receiving a suspended sentence. The transcript and appellate brief both confirm that petitioner and his counsel

7

hoped the state would agree to a suspended sentence following drug treatment. See Dkt. # 8-1 at 2-3; see also Dkt. # 7-5 at 7. However, he knew it would be an uphill battle, and that the prosecutors would have to "change[] their mind at some point in time." Dkt. # 8-1 at 2-3. At the sentencing hearing, he answered "yeah" when the judge asked if he recalled that "the state in the past has not agreed to a suspended sentence or any of that in [his] case." Dkt. # 8-3 at 2. On this record, the Court cannot find that counsel misled petitioner or that petitioner misunderstood the nature, consequences, or penalties associated with his plea.

Moreover, the state court found, and the Court agrees, that any illegal-search argument had no impact on the plea. See Dkt. # 8-5 at 32-41. A voluntary plea waives all non-jurisdictional defenses, including a Fourth Amendment violation. See United States v. Salazar, 323 F.3d 852, 856 (10th Cir. 2003). The Court is also not convinced that, but for the plea or counsel's advice, petitioner could have pursued a colorable illegal-search argument. The Tenth Circuit has found probable cause for a warrantless search, where, as here, the officers detected the "chemical odor . . . associated with the manufacturing of methamphetamine." United States v. Windrix, 405 F.3d 1146, 1152 (10th Cir. 2005). The initial search, therefore, appears valid. And, even if petitioner could have sought to suppress evidence uncovered during a later search - when officers reentered the property after securing the scene - any additional evidence would have been cumulative. The later, allegedly invalid, search occurred after petitioner had already received a proper Miranda warning and admitted he owned the one-pot laboratory. See Dkt. # 8-1 at 2-5; see also Dkt. # 1 at 16-17. Accordingly, the Court is not convinced that petitioner's limited understanding of any illegal-search argument rendered the plea involuntary. The OCCA correctly applied federal law to the facts, and Grounds 1 and 3 fail.

**B. Ineffective Assistance of Counsel (Ground 2)**

Petitioner also argues that plea counsel rendered ineffective assistance. See Dkt. # 1 at 15. Ground 2 mirrors the arguments in Ground 1. Petitioner contends that counsel failed to raise an illegal-search argument, and led him to believe that the prosecutor would agree to a suspended sentence upon successful completion of the treatment program. Id. at 15-7. The OCCA rejected this claim under the two-prong test announced in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner must show that his counsel's performance was deficient and that the deficient performance was prejudicial. 466 U.S. at 687. To satisfy the second prong, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). The OCCA concluded that plea counsel's conduct was within "the wide range of professionally competent assistance." Dkt. # 7-6 at 3. The OCCA also found no prejudice, noting that petitioner had no "legal grounds of merit which counsel should have recognized." Id.

As discussed above, the record controverts petitioner's assertion that counsel misled him regarding the suspended sentence. Further, even if counsel did err, petitioner suffered no prejudice. Because petitioner failed to complete the treatment program, he was ineligible for a suspended sentence under any circumstances. There is also no indication from the record that raising an illegal-search argument would have produced a better outcome, or altered petitioner's decision to enter a plea. See supra, section A. Indeed, it appears that petitioner received the best outcome possible, given his prior convictions. He had an opportunity to attend treatment; jumped bail; and still received the minimum sentence permitted by law. Therefore, the OCCA reasonably applied

9

Strickland when it rejected petitioner's claim for ineffective assistance of counsel. Habeas relief is unavailable as to Ground 2, and the petition (Dkt. # 1) must be denied.

### III.

Habeas Corpus Rule 11 requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons discussed above, petitioner has not made the requisite showing on any of his claims. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus (Dkt. # 1) is **denied.**

3. A certificate of appealability is **denied**.

4. A separate judgment will be entered herewith.

**DATED** this 24th day of June, 2019.

_Claire V. Eagan_
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE